IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ADAM JOSEPH RESOURCES (M) SDN. BHD. § § § Plaintiff, § § C.A. NO. _____ VS. § § CNA METALS LIMITED § § Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW Plaintiff, Adam Joseph Resources (M) Sdn. Bhd., and files this Original Complaint against Defendant, CNA Metals Limited, as follows:

**I.**
**PARTIES**

1. Plaintiff, Adam Joseph Resources (M) Sdn. Bhd., ("AJR") is a foreign business entity incorporated and based in Malaysia with its principal place of business in Malaysia.

2. Defendant, CNA Metals Limited, ("CNA") is a Texas corporation located in this District and Division and may be served with summons and complaint in this matter by serving its registered agent, Neha Agrawal, at 4800 Sugar Grove Blvd., Suite 475, Stafford, Texas 77477.

**II.**
**JURISDICTION & VENUE**

3. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(2) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs and concerns a dispute between a citizen of this state and a citizen

of a foreign state.

4. Venue in this District and Division is proper under 28 U.S.C. §1391(b)(1) because the Defendant resides in this District and Division.

## III.
## FACTS

5. AJR is a privately owned company located in Malaysia engaged in the business of recycling ferrous and nonferrous scrap metal. It purchases bulk scrap metal products from various suppliers and recycles the scrap by separating it into its various components and then selling the components to scrap processing plants located around the world.

6. CNA is a scrap metal dealer located in Stafford Texas. CNA does not recycle scrap metal, it only buys and resells it to recyclers such as AJR.

7. On 25 August 2010, AJR and CNA entered into a contract whereby AJR contracted to purchase 2400 metric tons of insulated copper wire from CNA for the provisional sum of $5,800,200.00 pursuant to the terms and conditions set out in AJR Purchase Order: PM-10Q0200. ("Purchase Order"). CNA assigned its invoice No. 11760 to this contract.

8. The Purchase Order required AJR to pay a 10% deposit of the provisional sum to secure its right to purchase the 2400 metric tons of wire with the 90% balance being paid DP (documents against Payment) as specified in the Purchase Order.

9. By 28 September 2010, AJR had paid CNA $580,020.00 satisfying the 10% purchase deposit requirement.

10. However, on 29 September 2010, and even before the first container of scrap wire had been delivered, CNA was seeking to amend the contract to require a 20%

deposit because the market value for copper had significantly increased and was demanding AJR pay it an additional $806,900.00 in deposit.

11. On 5 October 2010, CNA sent AJR a payment demand of $1,005,721.19 for 16 containers of wire not yet having delivered the first container of wire and not otherwise having complied with the DP payment terms.

12. On 5 October 2010, while not contractually obligated to tender any further deposits, AJR nevertheless tendered CNA an additional deposit payment of $67,200.00 bringing its deposit payment total to $647,220.00.

13. On 22 and 28 October 2010, AJR tendered CNA payments totaling $406,524.18 in full payment of CNA invoice Nos.: 11760, 11760A and 11760B for the first six containers of wire scheduled for delivery to AJR.

14. Despite having paid in full for these six containers of wire, CNA only released the documents to four of the containers refusing to release the documents to the other two containers until AJR paid additional deposit money.

15. To resolve this dispute, AJR and CNA entered into an Addendum Agreement dated 11 November 2010 ("Addendum") wholly prepared by CNA expressly superseding certain terms of the AJR Purchase Order.

16. The Addendum acknowledges AJR's deposit payment of $647,220.00 and expressly provides that the deposit shall be divided into 44 equal amounts ($14,709.55) to be deducted from CNA's invoices for the "last 44 containers" to be released.

17. The parties went forward with the contract and 40 containers of wire were paid for and released.

18. On 22 November 2010, CNA submitted invoice No. 11760AC to AJR for four containers of wire in the "last 44 containers".

19. At the time AJR received invoice No. 11760AC, AJR had not received invoice Nos.: 11760M, N, O, P, Q, R, S, U, V, W, AA, or AB ("skipped invoices").

20. AJR thought this strange because it had attended the loading of the wire into 92 containers that its Purchase Order was going to be filled from and had recorded the order of loading of each container.

21. The order of container loading and sealing was the general order of shipment with first loaded containers shipping to AJR first with later loaded containers being shipped later.

22. Indeed, the order of container loading and sealing at the load site was the order of shipment followed by CNA up to invoice No. 11760L. After invoice No.11760L, the containers which should have shipped next based upon order that they loaded were skipped by CNA.

23. When CNA presented invoice No. 11760AC for payment, AJR inquired where invoice Nos. 11760 M, N, O, P, Q, R, S, U, V, W, AA and AB were and why AJR was not receiving the containers listed on those invoices.

24. CNA refused to address AJR's inquiries demanding invoice No. 11760AC be paid before any other matters would be discussed or considered.

25. AJR advised CNA that invoice No. 11760AC was incorrect because the four containers identified thereon were in the "last 44 containers" and the invoice failed to deduct the $14,709.55 per container credit due AJR on each of the four containers as required by the Addendum.

26. AJR requested CNA to correct and resubmit its invoice so that AJR's bank would pay the invoice but CNA refused demanding the invoice be paid in full or CNA would ship no further containers.

27. AJR advised CNA that AJR's bank would not pay the invoice until it was in the correct amount and offered alternative solutions to CNA trying to resolve this dispute but they were summarily rejected.

28. CNA delivered no further containers and kept AJR's entire deposit of $647,220.00 refusing to return it or any part thereof despite not earning any of the deposit and despite the absence of contractual terms providing for retention of deposit money.

29. As of the date that CNA refused further performance, excluding the $647,220 deposit money converted by CNA, AJR had paid CNA $2,236,011.03 and had received 40 containers of wire.

30. Investigation has since established that the containers on the "skipped invoices" generally had high copper content and had been diverted by CNA to other buyers while the out of order containers that CNA did ship, (invoice Nos. 11760 T, X, Y, and Z) generally had low copper content.

31. Discovery will establish that CNA made a significant increase in profit from its sale of the wire in the containers on the skipped invoices over the price it was under contract to sell these same containers of wire to AJR.

32. Discovery will further establish that at the very time CNA was demanding payment for containers of wire loaded not yet delivered, many of the containers had already been diverted by CNA and sold to other buyers at a price believed to be in excess of the price it had sold the wire to AJR.

## IV.
### BREACH OF CONTRACT

33. AJR adopts its statement of facts above as if set forth verbatim herein.

34. At all times material hereto, a valid Purchase Order and Addendum contract between AJR and CNA for the purchase, sell and delivery of scrap copper wire was in full force and effect.

35. Pursuant to the Addendum, a condition precedent to AJR paying CNA invoices for containers in the "last 44 containers" was CNA submitting an invoice in the correct amount reflecting the deposit credit due AJR for each container identified in the invoice.

36. CNA submitted its invoice 11760AC to AJR for four containers of wire in the amount of $341,529.53 but breached the Addendum by failing to deduct $58,838.20 (4 X $14,709.55) from its invoice as required by the Addendum.

37. AJR advised CNA of its error and invited CNA to correct and resubmit its invoice but CNA refused declaring the contract terminated thereby further breaching the Addendum.

38. CNA breached its contractual obligations owed to AJR by diverting and selling containers of wire to third parties that CNA was contractually obligated to sell and deliver to ALJ.

39. CNA breached its contractual obligations owed to AJR by wrongfully retaining and converting AJR deposit money in the amount of $647,220.00 which CNA had not earned and had no right to retain.

40. CNA further breached the Purchase Order and Addendum by diverting and selling to third parties, containers of wire that AJR was entitled to under the

contract claiming that AJR was tardy in paying CNA invoices when CNA had not yet tendered negotiable bills of lading to AJR's funding bank, a condition precedent to payment of CNA invoices.

41. CNA breached the Purchase Order and Addendum by unilaterally changing terms of payment and/or the amount of deposit necessary in order for CNA to honor the contract and continue to make deliveries.

42. CNA breached the Purchase Order and Addendum by demanding additional sums of money from AJR that CNA was not entitled to and by wrongfully withholding negotiable bills of ladings to specified containers that AJR had already paid in full for and was entitled to as matter of right.

43. CNA's multiple breaches of contract caused AJR to sustain damages as set forth below.

## V.
### COMMON LAW FRAUD

44. AJR adopts its statement of facts above as if set forth verbatim herein.

45. While CNA may have originally intended to honor its contractual obligation to deliver 2400 metric tons of wire to AJR when it first entered into the Purchase Order with AJR on 25 August 2010, by the time it was preparing the Addendum Agreement in early November 2010, it no longer intended to fulfill its contract.

46. From August 2010–November 2010, the market value of copper so increased that CNA could not stand the price it had locked in with AJR in August 2010 and decided it was not performing the reminder of its contract and was looking for a convenient way out of its contract.

47. At the time that the Addendum was prepared by CNA, was already diverting and selling to third parties wire it was contractually obligated to deliver to AJR.

48. CNA knew when it entered into the Addendum with AJR, that its statements of fact contained therein were false and that it was not going to deliver the balance of the wire remaining to be delivered under the contract and had entered into the Addendum with the intention of defrauding AJR.

49. CNA presented the Addendum to AJR with the intention that AJR act upon it which AJR did and then, CNA continued the fraud by promising AJR delivery and performance all the while knowing that CNA could not perform because it had sold and was selling the wire it had promised to AJD to third parties.

50. When CNA presented AJR its invoice No. 11760AC for payment, CNA was looking for a way to terminate the contract without appearing to be the party responsible for the termination.

51. CNA's fraud caused AJR to sustain damages as set forth below and justifies an award of exemplary damages due to its morally culpable and deceitful conduct.

## VI.
### DAMAGES

52. AJR will show that at the time of contracting with CNA, AJR made known to CNA that AJR's investors had spent several million dollars setting up a cable recycling operation at the Malaysia Free Trade Zone fully expecting CNA to perform under the contract and deliver the 2400 metric tons of wire it had contracted to sell and deliver to AJR.

53. AJR expended great time and effort lining up the financing arrangements to complete the wire purchases and lining up the sales of the wire that CNA had contractually obligated itself to deliver and had promised to deliver.

54. When CNA unilaterally breached the contract and diverted the remaining 44 containers of wire it was obligated to deliver to AJR, this caused AJR to sustain sever damages. More specifically, the failure of CNA to deliver the last 44 containers caused AJR to suffer loss of sale profits in the amount of at least $983,273.10.

55. AJR additionally suffered damage to its cable recycling business due to CNA's refusal to deliver the wire. AJR's investors became afraid to invest while its established buyers became afraid to enter into contacts to buy for fear that AJR would be unable to deliver.

56. CNA'S conduct caused AJR to suffer damage to its reputation and business good will in a sum not yet calculated.

57. Additionally, AJR has suffered the loss of its deposit money in the amount of $647,200.00 which CNA had no right to retain and has suffered the loss of use of that money for nearly four years as of the filing of this suit.

58. By reason of the above and foregoing matters, AJR has sustained liquidated damages, as same can be calculated at this time, in the amount of at least $1,630,473.10. AJR has suffered unliquidated damages in an amount not yet quantified.

59. Lastly, AJR seeks exemplary damages against CNA for its deceitful conduct in this case in such amount as will punish it for its conduct and will serve to deter it from the same or similar conduct in the future.

## VII.
### CONDITIONS PRECEDENT

60. All conditions precedent to CNA's obligation to pay AJR have occurred, been discharged or otherwise have been fully performed.

## VIII.
### ATTORNEY'S FEES

61. AJR seeks recovery of its reasonable and necessary attorney's fees pursuant to Section 38.001, *et. seq.*, of the Texas Civil Practice and Remedies Code.

## IX.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Adam Joseph Resources (M) Sdn. Bhd., prays that Defendant, CNA Metals Limited, be summoned to appear and answer herein and that upon final trial, Adam Joseph Resources (M) Sdn. Bhd. be awarded judgment against Defendant, CNA Metals Limited, for the full measure of damages as proved at trial and that said sum be awarded with prejudgment interest commencing at the highest legal rate from the date of suit until the date of judgment and additionally, as to the $647,220.00 deposit money wrongfully converted by CNA, that prejudgment interest be awarded on this sum from the dated of the Addendum agreement, 11 November 2010, to the time of suit and that Adam Joseph Resources (M) Sdn. Bhd. also be awarded post-judgment interest on the entire judgment from the date of judgment until paid, and for its reasonable and necessary costs of court and attorney's fees, and such other and further relief to which the justice of this cause may allow.

Respectfully submitted,

By:   */s/ James R. Koecher*
     James R. Koecher
     SDTX No. 7372
     Texas Bar No. 11648700
     1177 West Loop South, Tenth Floor
     Houston, Texas 77027-9007
     Telephone: (713) 629-1580
     Facsimile: (713) 629-5027

ATTORNEYS FOR PLAINTIFF,
ADAM JOSEPH RESOURCES (M) SDN. BHD.

OF COUNSEL:

BROWN SIMS