IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAM JOSEPH RESOURCES (M) SDN. BHD., | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. H-14-1801 |
| CNA METALS LIMITED | | |
| Defendant. | | |

MEMORANDUM AND ORDER

Pending is Defendant CNA Metals Limited's Motion to Compel Arbitration and to Stay Proceedings (Document No. 9). After carefully considering the motion, response, and applicable law, the Court concludes as follows.

I. Background

Plaintiff Adam Joseph Resources (M) Sdn. Bhd. ("Plaintiff") is a Malaysian business engaged in recycling scrap metal, which it purchases in bulk from various suppliers.[1] Defendant CNA Metals Limited ("CNA") is a Texas corporation which buys and resells scrap metal to recyclers such as Plaintiff.[2] In August 2010, the parties signed a Purchase Order for the sale of 2,400 metric tons of

---

[1] Document No. 1 ¶¶ 1, 5 (Orig. Compl.).

[2] Id. ¶¶ 2, 6.

insulated copper wire from Defendant to Plaintiff.[3] After Plaintiff had made some payments and Defendant had delivered some of the copper wire, a dispute arose about the parties' respective obligations and the payment schedule.[4] On November 11, 2010, the parties signed an "Adendum [sic] Agreement" (the "Addendum") "to prevent future disputes arising from misunderstanding and different interpretations on the terms of payment of [the Purchase Order]."[5]

Paragraph 9 of the Addendum (the "Arbitration Agreement") provides:

> It is the intention of Parties to settle amicably any dispute or difference between the parties arising out of or relating to [the Purchase Order] or this Agreement, including the formation, performance, interpretation, nullification, termination or invalidation of this Agreement, by conference and negotiations. In the event that the parties are unable to resolve any disagreement or difference of opinion arising out of this Agreement the parties[] agree to dispose of the matter thus:
>
> a) The person in-charge of [Plaintiff] and [Defendant] shall meet to attempt resolution. Should they not meet and resolve the matter within seven days of the time at which either of the managers convenes a meeting to resolve the matter, then
>
> b) The matter shall be promptly referred for resolution to the Chief Executive Officer of [Plaintiff] and a person of equivalent standing nominated by [Defendant].

---

[3] Document No. 9, ex. A. Plaintiff agrees that this document is a copy of the original Purchase Order but disputes that the handwritten additions to the payment terms were part of the contract. See Document No. 14 at 1.

[4] See Document No. 1 ¶¶ 9-14; Document No. 9 at 3-4.

[5] Document No. 9, ex. B.

2

>   If they are not able to resolve the matter within seven
>   days of the referral under this Clause, then
>
>   c) The matter shall be referred to arbitration in Fort
>   Bend County, Texas in accordance with the rules of
>   American Arbitration Association.[6]

After signing the Addendum, the parties proceeded to make further payments and deliveries, but eventually reached another impasse, with Plaintiff refusing to make further payments and Defendant refusing to make further deliveries.[7] In June 2014, Plaintiff filed this suit, alleging that Defendant breached its contract and committed fraud when it retained Plaintiff's deposit money, unilaterally changed the terms of payment, and diverted to third parties some of the containers of wire to which Plaintiff was entitled.[8] Defendant answered, asserting that Plaintiff's claims are within the scope of an arbitration agreement between the parties and that the case should be stayed pending arbitration.[9] Defendant simultaneously counterclaimed for breach of contract, alleging that Plaintiff had not made its required payments and that Defendant's losses from being forced to sell the copper elsewhere exceeded Plaintiff's deposits.[10] Defendant now moves to compel

---

[6] Id., ex. B at 2.

[7] See Document No. 1 ¶¶ 17-32; Document No. 9 at 4-6.

[8] Document No. 1.

[9] Document No. 7 ¶ 62.

[10] Id. ¶¶ 67-93.

Plaintiff to submit its claims to arbitration based on the Arbitration Agreement and to stay or dismiss the proceedings in this Court.[11]

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), "[a] two-step inquiry governs whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004) (quotation marks and citation omitted). The first step requires the Court to determine whether there is a valid agreement to arbitrate between the parties and whether the dispute in question falls within the scope of that arbitration agreement. Id. (citing Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996)). Although a strong federal policy favors arbitration, the policy does not apply to the initial question of whether there is a valid agreement to arbitrate. Id. However, "once a court determines that an agreement to arbitrate exists, the court must pay careful

---

[11] Document No. 9.

4

attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." Id. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 103 S. Ct. 927, 941 (1983).

III. Discussion

As an initial matter, Plaintiff states in its Response that "[Defendant] answered [Plaintiff's] suit and filed a counterclaim against [Plaintiff] thereby indicating its intention to proceed in this Court."[12] To the extent that Plaintiff argues that Defendant has waived its right to demand arbitration, such argument is meritless. A defendant can waive arbitration by actions taken in court "if those actions are sufficiently inconsistent with the right to arbitrate," but answering and filing counterclaims are not inconsistent with the right to arbitrate. Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc., 427 F.2d 924, 929 (5th Cir. 1970) (no waiver of right to arbitrate where defendant answered complaint, filed counterclaim which might have been compulsory, and allowed plaintiff to take depositions before indicating any intent

---

[12] Document No. 14 at 6.

5

to request arbitration); *see also* Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co., 243 F.3d 906, 911 (5th Cir. 2001) ("There is a strong presumption against waiver, and any doubts thereabout must be resolved in favor of arbitration."). Defendant's Answer prominently stated--both on the first page and as an affirmative defense--that Plaintiff's claims were within the scope of a valid arbitration agreement,[13] and Defendant moved to compel arbitration less than one month after answering.[14] Accordingly, Defendant has not waived its right to arbitrate. *See* Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir. 1985) (defendant did not waive right to arbitrate when it "waited almost eight months before moving that the district court proceedings be stayed pending arbitration, and, in the meantime, participated in discovery," where its answer put plaintiff on notice as to its desire to arbitrate).

Plaintiff does not dispute that it signed the Addendum, containing the Arbitration Agreement,[15] but contends that its claims for fraud and breach of contract are outside the scope of the Arbitration Agreement because they do not arise from the Addendum.[16] Plaintiff's argument that "[Plaintiff's] claims in this case do not

---

[13] Document No. 7 at 1, 5.

[14] Document No. 9.

[15] *See* Document No. 14 at 1.

[16] Id. at 8-9.

6

in any way arise from or fall within the scope of the Addendum"[17] appears disingenuous given the fact that Plaintiff in its Original Complaint in five separate paragraphs alleges multiple instances when Defendant breached the Addendum.[18]

The Arbitration Agreement in the Addendum states that "[i]t is the intention of Parties to settle amicably *any dispute or difference* between the parties *arising out of or relating to [the Purchase Order] or this Agreement, including the formation, performance, interpretation, nullification, termination or invalidation of this Agreement,* by conference and negotiations," and provides for arbitration "to resolve *any disagreement or difference of opinion arising out of this Agreement.*"[19] Plaintiff's dispute with Defendant arises out of Defendant's alleged breach of its contractual obligations under the Purchase Order and the Addendum, along with associated fraud.[20] These claims fall within the broad scope of the Arbitration Agreement.

Plaintiff further argues that because Defendant materially breached both the Purchase Order and the Addendum, both contracts were effectively revoked and the Arbitration Agreement is therefore

---

[17] Id. at 9.

[18] Document No. 1 ¶¶ 36-37, 40-42.

[19] Document No. 9, ex. B at 2 (emphasis added).

[20] *See* Document No. 1.

no longer binding.[21] "[W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator." Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir. 2003) (citing Primerica Life Ins. Co. v. Brown, 304 F.3d 469 (5th Cir. 2002); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 87 S. Ct. 1801 (1967)). "Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." Id.

Plaintiff does not dispute that it agreed to the Arbitration Agreement when it signed the Addendum. Plaintiff's claim that Defendant's breach of other provisions in the Purchase Order and Addendum renders the Arbitration Agreement unenforceable is a general attack on the enforceability of Plaintiff's obligations in the Addendum.[22] Accordingly, Plaintiff's argument is for the arbitrator, not this Court, to consider. See id. at 218-19 ("That one of the parties later disputes the enforceability of [their agreement] does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the

---

[21] Document No. 14 at 7-12.

[22] See Document No. 14 at 8 ("If a contract is revoked as a result of a material breach, it effectively no longer exists.") (quoting Tri-Star Petroleum Co. v. Tipperary Corp., 107 S.W.3d 607, 614 (Tex. App.-El Paso 2003)).

decision to arbitrate disputes arising out of the agreement. The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist. Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.") (emphasis in original).

Because Plaintiff's claims fall within the broad scope of the Arbitration Agreement to which it agreed, Defendant's Motion to Compel Arbitration will be granted, together with Defendant's motion to stay these proceedings pending arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.").

## IV. Order

Accordingly, it is

ORDERED that Defendant CNA Metals Limited's Motion to Compel Arbitration and Stay Proceedings (Document No. 9) is GRANTED, and it is therefore ORDERED that Plaintiff Adam Joseph Resources (M) Sdn. Bhd. shall proceed to arbitration with Defendant CNA Metals Limited in Fort Bend County, Texas, in accordance with the terms of their November 11, 2010 "Ad[d]endum Agreement." In light of this impending arbitration, it is further

ORDERED that all proceedings in this action are STAYED pending the outcome of the arbitration. Within thirty (30) days after a final award in arbitration has been rendered in the Fort Bend County, Texas arbitration, any party to this action may move to lift this STAY by filing a motion accompanied by a copy of this Order and evidence that the arbitration has been concluded.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 3rd day of November, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE