Case 4:14-cv-01801 Document 49 Filed in TXSD on 06/20/17 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
June 20, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAM JOSEPH RESOURCES (M) SDN. BHD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-1801 |
| CNA METALS LIMITED, | § § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant CNA Metals Limited's Rule 60(b)(5) Motion to Set Aside Final Judgment or, Alternatively, Motion for Entry of Satisfaction of Judgment (Document No. 28); Defendant CNA Metals Limited's Motion to Show Authority (Document No. 34); and Plaintiff's Motion for Relief from Final Judgment (Document No. 42). After carefully considering the motions, responses, replies, oral arguments, and applicable law, the Court concludes as follows.

After two years of vigorous advocacy before the International Centre for Dispute Resolution, Plaintiff Adam Joseph Resources (M) Sdn. Bhd. ("Plaintiff"), assisted by its able counsel James Koecher ("Koecher") of the Texas law firm Brown Sims, obtained an arbitral award in Plaintiff's favor against Defendant CNA Metals Limited ("Defendant") in the amount of $503,943.56 (the "Arbitral Award").[1]

---

[1] Document No. 24, ex. B.

When Defendant did not tender payment of the Arbitral Award, Plaintiff moved for confirmation of the Award in this Court.[2] No opposition having been filed to the motion, the Court signed a Final Judgment Confirming Arbitral Award on December 13, 2016.[3] Mr. Koecher and Brown Sims had represented Plaintiff throughout the arbitral proceedings and litigation on the basis of a written contingency fee agreement that entitled Brown Sims to be paid for its successful services 37% of "any recovery realized in this matter."[4]

Unbeknownst to Plaintiff's counsel, Defendant's counsel Ronald Cohen, a Houston attorney who had been Mr. Koecher's opponent throughout the two years of arbitral proceedings, died on October 24, 2016, the same day that the Arbitral Award issued.[5] Mr. Cohen's surviving law partner, William G. Small, of Cohen and Small, is not shown to have appeared of record for Defendant CNA Metals after Cohen died. At some point, however, Defendant CNA Metals retained a different Houston law firm, Mahendru, P.C. Likewise, with no notice to Mr. Koecher or Brown Sims at the time,

---

[2] Document No. 24.

[3] Document No. 27.

[4] Thus, upon payment of the Arbitral Award of $503,943.56, Brown Sims would be due a fee of approximately $186,500, and Plaintiff Adam Joseph Resources would be entitled to a net recovery after paying attorney's fees of approximately $317,500.

[5] Document No. 27, ex. A.

Mr. Koecher's client--the successful Plaintiff--began acting through retained counsel in Malaysia.

CNA Metals's new counsel, Mahendru, P.C., copied Koecher on an email on November 23, 2016, which advised Mr. Koecher that Defendant intended to appeal the Arbitral Award. Within two weeks thereafter, however, on December 7, Plaintiff's Malaysian counsel and Defendant's Mahendru, dealing directly with each other and without notice to Mr. Koecher, completed negotiations of a surreptitious settlement, pursuant to which Defendant paid to Plaintiff $395,000 in cash, and both parties executed and exchanged mutual releases of all claims and liabilities "from the beginning of time up to the date this Agreement is executed." No allowance was made for payment of the Browns Sims's contingency fee. Thus, compared to the Arbitral Award confirmed by this Court's Final Judgment of December 13th, the settlement reduced Defendant's liability to Plaintiff by approximately $109,000 and by cheating its attorneys out of their attorneys' fees, Plaintiff netted an additional $77,500 for itself. This settlement payment of $395,000, and exchange of mutual releases, all took place--without notice to the Court--six days before the Court issued its Final Judgment Confirming Arbitral Award.

Defendant now moves to set aside the Final Judgment, or alternatively to enter a satisfaction of judgment based on the

parties' settlement and release.[6] Brown Sims, as counsel for Plaintiff and "owner of an undivided interest in the Final Judgment," filed a response in opposition to Defendant's motion and a notice to withdraw as counsel, citing irreconcilable differences.[7] Defendant in turn filed a motion to show authority, arguing that Brown Sims had no legal authority to file the response in opposition on Plaintiff's behalf.[8] Brown Sims subsequently filed its Clarification of Notice of Withdrawal, explaining that it did not seek to withdraw as counsel of record and "fully intends to remain as counsel for its own interests being litigated in the name of the Plaintiff . . . ."[9] Brown Sims also moved to intervene[10] and filed in the name of its disloyal client, who had settled behind its back, a motion for relief from judgment, seeking an order reforming the Final Judgment to account for Brown Sims's claim for $188,167.02, which amount represents 37% of the Arbitral Award plus Brown Sims's expenses in pursuing this matter.[11] When the Court held a hearing on the parties' pending motions, Brown Sims withdrew its motion to intervene because the Court lacked subject matter

---

[6] Document No. 28.

[7] Document Nos. 31, 32.

[8] Document No. 34.

[9] Document No. 40 at 1.

[10] Document No. 35.

[11] Document No. 42.

jurisdiction over its proposed claim against Defendant, a non-diverse party. The other motions remain pending.[12]

Brown Sims, betrayed as it was by its own client, would appear to have a meritorious claim against Plaintiff to recover its contractually agreed attorneys' fees.[13] As suggested by Mr. Koecher, Brown Sims may also have an action against Defendant, whose counsel Mr. Cohen had been informed by Mr. Koecher that Brown Sims represented Plaintiff on a contingency fee basis. At this juncture, however, this Court has not been shown to be the proper forum to resolve those claims.

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 114 S. Ct. 1673, 1675 (1994). "Creatures of statute, they have only such jurisdiction as the statutes expressly confer, and . . . [w]henever the question of jurisdiction of the federal District Court is presented it will be presumed that the court is without jurisdiction unless the contrary affirmatively appears." Le Mieux Bros. v. Tremont Lumber Co., 140 F.2d 387, 389 (5th Cir. 1944). Courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," provided however, that where original jurisdiction is founded solely on diversity jurisdiction,

---

[12] Document No. 47.

[13] Document No. 31, ex. A ¶ 19.

as is the case here, supplemental jurisdiction may not be had over claims by persons seeking to intervene as plaintiffs if "exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(a), (b).

Brown Sims, relying on Exact Software North America, Inc. v. DeMoisey, 718 F.3d 535 (6th Cir. 2013), argues that "under circumstances similar to those present here, courts have held that they possess the jurisdiction to resolve contingency fee disputes arising out of the underlying case and that the provisions of the supplemental jurisdiction statute, 28 U.S.C. § 1367, do not prevent the courts from exercising that jurisdiction."[14] In Exact Software, the Sixth Circuit distinguished between the "run-of-the-mine fee dispute between a party and its (usually in-state) lawyer over the distribution of settlement proceeds" and the addition of a new claim to the case. 718 F.3d at 542, 544. The former, the court explained, was not subject to the restrictions of § 1367, which does apply to new claims. See id. at 544-45 ("When all that the lawyer seeks is payment for services performed, payment of a

---

[14] Document No. 36 at 5-6. As observed above, Brown Sims initially sought to intervene as a plaintiff, asserting a claim under Texas law to recover its fees directly from Defendant. Given the limits of § 1367 on claims by intervening plaintiffs that would destroy diversity--Brown Sims and Defendant are both Texas entities--this avenue of relief is not available to Brown Sims. See Griffin v. Lee, 621 F.3d 380, (5th Cir. 2010) (vacating for lack of subject matter jurisdiction judgment obtained by attorney who intervened to collect his fees from his former client).

contingency fee or payment from a common fund, all in a pending case, there is no reason to intervene, to file a new claim or even to become a 'party' to the case--leaving the resolution of this issue not to the intricacies of § 1367 but to the traditional authority of a district court over the parties and lawyers before it.").

Unlike Exact Software, this is not a typical attorney-client fee dispute or case in which Brown Sims seeks to recover from a common fund. See id. at 544. Instead, Brown Sims, ostensibly on behalf of its client, seeks a reformation of the Final Judgment which, if granted, would effectively adjudge Brown Sims's claim not only against its client but also against the non-diverse Defendant. To do so, the Court must have jurisdiction.[15]

Brown Sims also cites Texas cases for the proposition that the Court may skirt the § 1367 jurisdictional issue and reform the judgment to reflect a judgment against Defendant in favor of Brown

---

[15] As observed above, the Court does not have original jurisdiction over such claim against Defendant as Brown Sims and Defendant are both citizens of Texas and the fee dispute does not raise a federal question. See 28 U.S.C. §§ 1331, 1332. Moreover, Brown Sims's claim does not arise from a common nucleus of operative facts that makes up the underlying litigation, which involved a breach of contract dispute regarding the purchase and sale of scrap metal, and thus, the Court has no supplemental jurisdiction over this claim. See Venable v. La. Workers' Comp. Corp., 740 F.3d 937, 944 (5th Cir. 2013) (finding no supplemental jurisdiction where claims related to conduct during and after a settlement conference depended on facts that were unrelated to the original negligence claim over which the court had maritime and admiralty jurisdiction).

Sims. The Texas cases, however, involved suits in state courts of general jurisdiction, not in federal court, and, therefore, were not impeded by the limited jurisdiction conferred on federal courts. Moreover, in the Texas cases where settlements were made to deprive the plaintiff's lawyer of his contingency fee, notations in the record *made prior to the settlement* typically establish that the attorney's interest in the case had been disclosed and made a matter of record. *See, e.g.*, Seiter v. Marschall, 147 S.W. 226, 227 (Tex. 1912) (even though client settled with opposing party after judgment, the victimized attorneys could appeal an unfavorable judgment in the client's name where the client's conveyance of an interest in the claim to its attorneys had been "filed in the papers of the case in the trial court . . . and a notation thereof made upon the margin of the minutes of the trial court . . . ."); Tex. Cent. R. Co. v. Andrews, 67 S.W. 923, 925 (Tex. Civ. App. 1902, writ ref'd) (payment of settlement resulted in only partial satisfaction of judgment where defendant had notice of plaintiff's assignment of interest to attorney "since [the assignment] was not only filed with the petition, but also made the basis of its special plea of nonjoinder of parties"). A published record of Brown Sims's interest before the instant post-Judgment dispute arose has not been shown in this case.[16]

---

[16] Mr. Koecher provides verified proof--uncontroverted by Defendant--that he "personally advised [Defendant's] Attorney Cohen that Brown Sims was handling the case for AJR [Adam Joseph

Defendant's argument is persuasive that the Final Judgment must be vacated, and the case dismissed for lack of jurisdiction. The parties made the surreptitious settlement, executed their mutual releases, and Defendant paid and Plaintiff accepted the settlement sum before the Court signed the Final Judgment Confirming Arbitral Award on December 13, 2016. Hence, a live controversy no longer existed between the parties on December 13th. *See* FED. R. CIV. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . (5) the judgment has been satisfied, released or discharged . . . ."); Goldin v. Bartholow, 166 F.3d 710, 718 (5th Cir. 1999) ("If mootness occurred prior to the rendering of final judgment by the district court, vacatur and dismissal is automatic. The district court would not have had Article III jurisdiction to render the judgment, and we cannot leave undisturbed a decision that lacked jurisdiction."); Gould v. Bowyer, 11 F.3d 82, 83 (7th Cir. 1993) ("The dispute between the parties had not yet become moot when the judgment was entered, because the settlement

---

Resources] on a contingency fee arrangement and that AJR had assigned Brown Sims an interest in AJR's claims against CNA." Document No. 31, ex. A ¶ 19. Thus, Defendant CNA Metals may well be charged with knowledge of Brown Sims's contingency fee interest prior to making the deal with Plaintiff Adam Joseph Resources. However, Brown Sims's demand to reform the Final Judgment must still be analyzed as a claim in the law firm's behalf against a non-diverse party, CNA Metals, and the Court lacks jurisdiction.

agreement had not yet become effective. [Citation omitted.] So the judge was not under the imperative command of Article III of the Constitution to vacate the judgment."). Thus, Brown Sims (also now inherently conflicted with its client that committed the malefaction) cannot maintain an action in Plaintiff's name to enforce a Final Judgment that Defendant has shown must be vacated.[17]

In sum, while Brown Sims may have a viable claim to recover its fees, the Texas cases do not provide a basis upon which it may do so in the name of Plaintiff in this case. One cannot help but be "sympathetic to the added expense . . . [Brown Sims] will likely face in pursuing [its] claim for legal fees in a separate action and forum. However, efficiency and economy cannot confer jurisdiction upon the courts where Congress has, according to the Supreme Court, unambiguously chosen to limit such jurisdiction." Griffin v. Lee, 621 F.3d 380, 389-90 (5th Cir. 2010). Accordingly, it is

ORDERED that Plaintiff's Motion for Relief from Judgment (Document No. 42) is DENIED and Defendant CNA Metals Limited's Rule 60(b)(5) Motion to Set Aside Final Judgment (Document No. 28) is

---

[17] This also obviates Brown Sims's argument that an attorney may enforce his fee interest in a judgment obtained in the client's name. See e.g., Gibson v. Tex. Pac. Coal Co., 266 S.W. 137 (Tex. Comm'n App. 1924) (holding that attorney could execute on judgment for his percentage of interest where defendant had actual notice of attorney's interest). Because the judgment itself must be set aside, whatever may be Brown Sims's interest in the judgment will also be set aside.

GRANTED. Defendant's Motion to Show Authority (Document No. 34) is DENIED AS MOOT. It is further

ORDERED that the Final Judgment Confirming Arbitral Award (Document No. 27) is VACATED, and this action is DISMISSED for lack of jurisdiction, and without prejudice to all rights and claims that James Koecher and Brown Sims may have against Adam Joseph Resources (M) Sdn. Bhd. and other persons and parties.

An Amended Final Judgment will be separately signed by the Court.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 20TH day of June, 2017.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE